UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
ROBERT TOUSSIE,

          Plaintiff,

  -against-                    **MEMORANDUM AND ORDER**
                                    Case No. 14-2705 (FB) (CLP)
ALLSTATE INSURANCE COMPANY,
ALAN RODRIGUEZ INSURANCE
AGENCY, INC., and GEORGE J.
SCHLOTT, INC.,

          Defendants.
---------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
AVRUM J. ROSEN
Rosen Kantrow & Dillon PLLC
38 New Street
Huntington, New York 11743

*For Defendant Allstate Insurance Company:*
JOHN M. PENNEKAMP
Fowler White Burnett P.A.
1395 Brickell Avenue, 14th Floor
Miami, Florida 33131

**BLOCK, Senior District Judge:**

      Robert Toussie owns property at 290 Exeter Street and at 285 Coleridge Street in Manhattan Beach, Brooklyn. Both properties were insured by Allstate Insurance Company and both suffered flood damage during Hurricane Sandy in 2012.

      In 2010, Toussie's premium payment was erroneously applied to the Coleridge Street property instead of the Exeter Street property. As a result,

1

Allstate paid policy limits for damage to the Coleridge Street property but denied coverage on the Exeter Street property. Toussie sued, claiming that his single premium payment entitled him to coverage on both properties. For the following reasons, the Court holds, as a matter of law, that it did not.

I

Toussie's properties were insured against flooding through the National Flood Insurance Program ("NFIP"), under which claims are paid with federal funds. *See Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 184 (2d Cir. 2006). The policies themselves are issued and administered by private insurance companies, but they must take the form of a standard flood insurance policy ("SFIP") set out in federal regulations. *See Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 177 (2d Cir. 2012). Allstate first issued an SFIP covering the Exeter Street property in 2003. The policy was renewed annually without incident until 2009.

On November 4, 2009, Allstate sent Toussie a renewal notice for the Exeter Street policy. The notice advised that the policy would expire on December 19, 2009, unless Toussie paid the required annual premium of $388 by January 18, 2010. Toussie received a second such notice on December 18, 2009. In addition, Toussie's Allstate agent, Alan Rodriguez, sent him a fax on January 14, 2010, advising him to pay the premium by January 17, 2010, to avoid a lapse in coverage.

Meanwhile, the Coleridge Street property was due to expire on December 22, 2009. Allstate sent Toussie a first renewal notice for the Coleridge Street policy on November 6, 2009, and a second notice on December 21, 2009. As with the Exeter Street property, the premium for the Coleridge Street property was $388 and could be paid within 30 days of the expiration date without a lapse in coverage.

Toussie wrote one $388 check to Allstate. The check was dated January 14, 2010, and included a memo line referencing the number of the Exeter Street policy. He delivered the check to an employee of the Rodriguez agency, who recorded the payment in Allstate's centralized computer system and deposited the funds into an account shared by Allstate and the agency. A computerized receipt reflects that the check was received on January 19, 2010. The funds were deposited on January 20, 2010.

The agency employee erroneously applied the check to the policy covering the Coleridge Street property, which was due to lapse on January 21, 2010. This despite a note in the computer system advising "DO NOT PROCESS RENEWAL" of the Coleridge Street policy because it was duplicative of an older Allstate policy on the property. The agency did not advise Toussie that a second premium payment was due.

3

Because of the agency employee's error, Allstate considered the Exeter Street property lapsed and did not send renewal notices for the 2010-2011 and 2011-2012 policy periods.  By the same token, the error led Allstate to consider the Coleridge Street policy paid; it sent Toussie renewal notices for the 2010-2011 and 2011-2012 policy periods.  Toussie paid the required premiums for the Coleridge Street policy for those periods but did not make any further payments on the Exeter Street policy.

Hurricane Sandy hit the East Coast on October 29, 2012, causing flood damage to both of Toussie's properties.  As noted, Allstate paid policy limits for the damage to the Coleridge Street property  but denied the claim for damage to the Exeter Street property.

Toussie sued Allstate, the Rodriguez agency and George J. Schlott, Inc., which had purchased Rodriguez's book of business.  Toussie subsequently settled with Schlott for $50,000.

As to Allstate, Toussie alleged claims for (1) breach of contract and (2) vicarious liability for the Rodriguez agency's negligence and/or breach of fiduciary duty in processing his payment.  The Court previously denied Allstate's motion to dismiss those claims pursuant to Federal Rule of Procedure 12(b)(6).  After discovery, Allstate and Toussie filed cross-motions for summary judgment pursuant to Federal Rule of Procedure 56.

# II

## A. Breach of Contract

The Exeter Street policy obligated Allstate to compensate Toussie for flood damage to that property incurred while the policy was in effect. By its terms, the policy expired "at 12:01 a.m. on the last day of the policy term," SFIP § VII(H)(1), which was December 19, 2009. To renew the policy, Toussie had to pay the renewal premium "within 30 days of the expiration date," *id.* § VII(H)(2), that is, January 18, 2010. Apparently conceding that it received the premium when the Rodriguez agency received it, Allstate takes the position that the policy lapsed because the premium was not received by the agency until January 19, 2010.

There is arguably a legitimate question of fact as to whether the premium was received by the agency on the date of the check (January 14, 2010), the date of the receipt (January 19, 2010), or some date in between. But the question is immaterial because a payment on January 19, 2010, would have triggered reinstatement of the policy after a 30-day waiting period. Since the loss did not occur within that waiting period, it does not matter whether payment was received on January 14th or January 19th.

Allstate argues that a correctly applied payment would have provided coverage only through December 2010, almost two years before Hurricane Sandy. It is undisputed that no premium was paid for the 2010-2011 or 2011-2012 periods.

5

Allstate argues that no premium means no policy, and that no policy means no breach of contract.

Toussie responds with a different theory of breach. He argues that Allstate had a duty to notify him every year when his premium came due. Allstate did not provide any such notice after 2009 because, as far as it knew, the policy had expired without being renewed in December 2009.

The policy, however, does not mandate any renewal notice. Rather, a federal statute requires written notice to the property owner "not less than 45 days before the expiration of any contract for flood insurance under [the NFIP]." 42 U.S.C. § 4104a(c). That requirement is restated and elaborated in the NFIP's Flood Insurance Manual. But neither the statute nor the manual states that failure to provide the notice is a breach of the policy.

Nor does the statute or manual state that that the remedy for failure to provide a renewal notice is continued coverage despite nonpayment of the premium. In *Zeman v. Zack Agency, Inc.*, 429 N.Y.S.2d 444 (2d Dep't 1980), the Second Department interpreted New York's statutory notice requirement to authorize that remedy. But the court relied on specific statutory language requiring that the premium be "billed":

> We hold that the phrase "billed to the insured" in the [statute] requires that the insurer must actually bill the insured in order to subject the latter to a duty to pay the premium as a condition of renewal. In the absence of a nonrenewal notice and of a bill for a further premium, the

6

liability of the insurer remains in effect, despite the failure of the insured to pay premiums.

*Id.* at 447. But the NFIP is governed by federal law, not state law, and the "billed" language does not appear in the federal statute.

Moreover, the policy itself—the terms of which are set by federal regulations—provides a very different remedy:

> If we find, however, that we did not place your renewal notice into the U.S. Postal Service, [and i]f you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, . . . we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

SFIP § VII(H)(3). In other words, "the very language of this provision requires the insured to notify the insurance company that it has not received a renewal notice." *84 Albany Ave. Realty Corp. v. Standard Fire Ins. Co.*, 13 F. Supp. 3d 241, 245 (E.D.N.Y. 2014). Toussie did not so inform Allstate.

In sum, there was no policy in effect at the time of Hurricane Sandy; Toussie's attempt to connect that circumstance to Allstate's failure to provide renewal notices is not supported by the policy language. Therefore, the Court grants summary judgment to Allstate on Toussie's breach of contract claim.

**B.     Vicarious Liability for Negligence**

Toussie's theory fares better as a tort theory, which depends not on policy language, but on an insurance agent's duty to use due care in the conduct of his or her business. That duty is usually the subject of litigation when the agent fails to procure requested coverage, *see, e.g., Bruckmann, Rosser, Sherrill & Co. v. Marsh USA, Inc.*, 885 N.Y.S.2d 276, 278 (1st Dep't 2009), but the Court sees no reason why it could not extend to other tasks the agent agrees to perform. "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 N.Y. 236, 239 (1922) (Cardozo, J.).

Thus, the logic goes, the agency assumed a duty to use due care in accepting and applying Toussie's premium payment. Its failure to do so led Allstate to consider the policy lapsed and, therefore, not to send renewal notices. The lack of renewal notices led to there being no policy in effect when Hurricane Sandy hit. Not airtight, perhaps, but plausible.

Allstate does not argue to the contrary. Instead, it argues that the agency was Toussie's agent, not Allstate's, and so Allstate is not vicariously liable for its negligence. In support, it cites 44 C.F.R. § 61.5, which states that "representations regarding the extent and scope of coverage which are

8

not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent." The regulation, however, plainly refers to agency for the purpose of making representations of coverage, and the few cases citing it have all applied it to claims of misrepresentation.

Here, by contrast, Toussie is claiming that the agency's employees acted as Allstate's agents when accepting and applying his premium payment. That claim is supported by the undisputed facts that the agency's employees used Allstate's central computer system to record the payment, were authorized to cash Toussie's check, and deposited the funds into an account held jointly by the agency and Allstate. Moreover, Allstate does not dispute that it received the payment as soon as the agency accepted the check. Clearly, the agency was authorized to accept payments on behalf of Allstate.

Were that the end of the inquiry, the Court would grant summary judgment to Toussie on that issue. But Allstate points out that misapplication of Toussie's premium payment actually *benefitted* him because it caused the Coleridge Street policy to renew for the 2009-2010

9

policy period. Toussie then paid the renewal premiums for 2010-2011 and 2011-2012, and Allstate paid the policy limits after Hurricane Sandy.

The adverse and beneficial effects cancel each other out. Toussie paid the premium on a single policy and received the limits of the Coleridge Street policy, but nothing on the Exeter Street policy. Had his payment been corrected applied, he would have received the limits of the Exeter Street policy, but nothing on the Coleridge Street policy. The policy limits were the same.

At oral argument, Toussie's counsel argued that the agency's error led the Coleridge Street policy to be marked "paid," such that no one from the agency reminded him to pay the second premium. That is beside the point. As noted, Allstate had a statutory duty to send him a renewal notice within 45 days of the Coleridge Street policy's expiration. *See* 42 U.S.C. § 4104a(c). It did so and, indeed, provided a second notice a month later. In short, Allstate did everything it was required to do with respect to providing renewal notice.

The Rodriguez agency may well have assumed a voluntary duty to "remind" Toussie to pay his premiums before a policy lapsed (as the agency did for the Exeter Street policy). But unlike accepting and processing premium payments, there is no evidence that the agency provided those

10

reminders with Allstate's authorization or on its behalf. In other words, there is no evidence that the agency acted as Allstate's agent in that respect and, so, Allstate is not vicariously liable for its omissions.

As the Court explained at oral argument, it takes very seriously its oath to see that justice is done. Allowing an insured who has paid the premium for *one* policy to recover the limits of *two* policies is obviously an unjust result. Law, no more than equity, should abhor a windfall *Cf. Prudential Ins. Co. v. S.S. Am. Lancer*, 870 F.2d 867, 871 (2d Cir. 1989) ("We know of no general principle of law or equity that would in any way support what is so obviously an unjust result.").

## III

For the foregoing reasons, Allstate's motion for summary judgment is granted in its entirely and Toussie's cross-motion is denied. The case is dismissed with prejudice.

**SO ORDERED.**

  /S/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
March 5, 2020